# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MARK MLSNA, individually and on behalf of other similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>UNION PACIFIC RAILROAD CO.,<br><br>    Defendant. | Civil Action No. 18-cv-37<br><br>**COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

## INTRODUCTION

1. Plaintiff Mark Mlsna suffers from hearing loss, which limits his major life activities when he does not wear hearing aids. When Mlsna wears his hearing aids, however, his hearing loss has little to no negative effect on his life. To the point, Mlsna has been able to perform all of the essential functions of his job with Defendant Union Pacific Railroad since 2007.

2. In 2015, Union Pacific instituted a companywide policy whereby employees with hearing aids in positions that otherwise required hearing protection now had to also wear hearing protection and could not do so with their hearing aids. Union Pacific did so without a reasonable belief that employees with hearing aids could not perform the essential functions of their job or that it was a direct threat to anyone for employees with hearing aids to perform the essential functions of their jobs. Pursuant to Union Pacific's companywide policy, Mlsna and a prospective class of employees have been removed from service even though they can safely perform their jobs' essential functions, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA").

## PARTIES

3. Mlsna resides in Cashton, Wisconsin and has worked for Union Pacific as a Train Crewman since 2007.

4. Union Pacific is a railroad carrier engaged in interstate and foreign commerce. It is headquartered in Omaha, Nebraska.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over Mlsna's ADA claims under 28 U.S.C. § 1331.

6. Venue is proper under 28 U.S.C. § 1391 because Mlsna resided in the Western District of Wisconsin when he worked for Union Pacific, Union Pacific operates in the Western District of Wisconsin, and the illegal conduct occurred in the Western District of Wisconsin.

## MLSNA'S FACTUAL ALLEGATIONS

7. In April of 2007, Union Pacific hired Mlsna as a Train Crewman.

8. Union Pacific was aware that Mlsna suffered from hearing loss when it hired him.

9. The FRA promulgates hearing criteria that a Train Crewman must pass to be licensed.

10. The FRA allows Train Crewmen who fail its hearing test to then take the test with hearing aids.

11. If a Train Crewman passes the FRA's hearing test with hearing aids, the FRA certifies him or her.

12. Mlsna has never passed the FRA's hearing test without hearing aids.

13. Mlsna has always passed the FRA's hearing test with hearing aids.

2

14. Train Crewman work in a noisy environment and are therefore required to wear hearing protection.

15. From when he was hired until the dates at issue in this case, Mlsna has worn hearing aids without hearing protection while working as a Train Crewman.

16. Mlsna has never had an issue performing a Train Crewman's essential functions while wearing hearing aids without hearing protection.

17. It presents no direct threat to anyone for Mlsna to (a) wear hearing aids hearing protection while working as a Train Crewman, (b) wear hearing aids with hearing protections while working as a Train Crewman, and/or (c) wear amplified hearing protection without hearing aids while working as a Train Crewman.

18. Union Pacific has always known that Mlsna wore hearing aids without hearing protection when he worked as a Train Crewman.

19. Union Pacific has always known that Mlsna has never had an issue performing a Train Crewman's essential functions while wearing hearing aids without hearing protection.

20. Union Pacific has no legitimate reason to believe it presents a direct threat to anyone for Mlsna to (a) wear hearing aids hearing protection while working as a Train Crewman, (b) wear hearing aids with hearing protections while working as a Train Crewman, and/or (c) wear amplified hearing protection without hearing aids while working as a Train Crewman.

21. In 2015, Union Pacific adopted a companywide policy that prohibits employees with hearing aids from holding positions that require hearing protection and used such policy to remove the each member of the prospective class, including Mlsna, from service even though each member of the class, including Mlsna, can perform their jobs' essential functions.

22. Even were there is some argument that employees wearing hearing aids without hearing protection presented a direct threat to anyone, there is hearing protection that is explicitly designed to be used with hearing aids, as well as amplified hearing protection that will allow some employees with hearing aids to perform the essential functions of their jobs without hearing aids.

23. Union Pacific has refused to provide hearing protection that is designed to be used with hearing aids for its employees who wear hearing aids and hold positions that require hearing protection, instead being content with permanently removing these employees from service.

24. Union Pacific's above-described policy and refusal to accommodate are part of a bigger campaign to rid itself of employees with disabilities.

25. Union Pacific's reason for trying to rid itself of employees with disabilities include the following:

    a. Union Pacific is unionized, meaning it cannot reduce its workforce without furloughing its youngest workers, many of whom it knows will then seek employment elsewhere. By getting rid of its employees with disabilities, Union Pacific is able reduce its workforce without furloughing its youngest employees; and

    b. Employees with disabilities are likely to have associated medical costs, and Union Pacific is self-insured. By getting rid of its employees with disabilities, Union Pacific reduces the amount it will have to pay for employees' medical expenses.

26. In June of 2015, Mlsna filed a charge with the Equal Employment Opportunity Commission and the Department of Workforce Development.

27. On February 6, 2017, the Department of Workforce Development found probable cause to believe Union Pacific had violated state law.

28. Mlsna then requested a "Right to Sue" letter from the Equal Employment Opportunity Commission, which he has since received.

## CLASS ACTION ALLEGATIONS

29. Mlsna brings ADA claims pursuant to Federal Rule of Civil Procedure 23, seeking back pay, monetary relief, other compensatory relief, and injunctive and declaratory relief on behalf of himself and the following class:

> Individuals who, at any time from 300 days before the earliest date that a named plaintiff filed an administrative charge of discrimination to the resolution of this action, were removed from service over their objection and/or suffered another adverse employment action during their employment with Union Pacific for reasons related to their hearing.

Mlsna reserves the right to revise this class definition based on discovery or other legal developments.

30. Class treatment is appropriate because the class is so numerous that joinder of all members is impracticable. The exact number within the class is unknown, but it may be determined from records maintained by Union Pacific.

31. Class treatment is appropriate because there are questions of law or fact common to the class, including the following:

   a. whether Union Pacific discriminated against class members on the basis of their disabilities;

   b. whether Union Pacific's companywide policy of not allowing employees with hearing aids to work in positions that require hearing protection violates the ADA on its face or as applied;

   c. whether Union Pacific's companywide policy of not providing hearing protection that is designed to be worn with hearing aids violates the ADA on its face or as applied;

   d. whether Union Pacific's companywide policy of not allowing employees with hearing aids to work in positions that require

5

      hearing protection is job-related and consistent with business necessity under the ADA;

e. whether Union Pacific's companywide policy of not providing hearing protection that is designed to be worn with hearing aids is job-related and consistent with business necessity under the ADA;

f. whether Union Pacific's companywide policy of not allowing employees with hearing aids to work in positions that require hearing protection tends to screen out qualified employees with disabilities;

g. whether Union Pacific's companywide policy of not providing hearing protection that is designed to be worn with hearing aids tends to screen out qualified employees with disabilities;

h. Whether monetary damages, injunctive relief, and other equitable remedies are warranted; and

i. whether punitive damages are warranted.

32. Class treatment is appropriate because Union Pacific will raise common defenses to the claims.

33. Class treatment is appropriate because Mlsna is typical of the class's claims, and Mlsna will fairly and adequately protect the class's interests.

34. Class treatment is appropriate because Mlsna has retained counsel who are competent, experienced in litigating class actions, and will effectively represent the interests of the class.

35. Class treatment is appropriate under Federal Rule of Civil Procedure 23(b)(1) because prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Union Pacific and/or would create a risk of adjudications with respect to individual class members that, as a practical matter, would be

dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

36. Class treatment is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Union Pacific has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

37. Class treatment is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact, including those listed above, predominate over any questions affecting only individual members, and because a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

38. Class treatment of is appropriate under Federal Rule of Civil Procedure 23(c)(4) because this is a case in which class adjudication of particular issues would serve the interests of the parties and the Court.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF 42 U.S.C. § 12101, *et seq.*
### DISPARATE TREATMENT

39. Union Pacific was Mlsna and each of the prospective class's members "employer" within the ADA's meaning.

40. Mlsna and each of the prospective class's members are disabled within the ADA's meaning.

41. Mlsna and each of the prospective class's members are qualified individuals within the ADA's meaning.

42. Section 12112(a) of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

43. Section 12112(b)(5)(A) of the ADA defines "discriminat[ing] against a qualified individual on the basis of disability" as including "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . ."

44. Union Pacific discriminated against Mlsna and each of the prospective class's members on the basis of disability when it removed them from service on the basis of their hearing and/or when it refused to provide them hearing protection that is designed to be worn with hearing aids or to allow employees with hearing aids to perform the essential functions of their jobs without them.

45. Because Union Pacific violated 42 U.S.C. § 12112, Mlsna and each of the prospective class's members are have suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Mlsna and each of the prospective class's members are also entitled to attorneys' fees and costs incurred in connection with these claims.

46. Union Pacific committed the above-alleged facts with reckless disregard or deliberate disregard for Mlsna's and each of the prospective class's members' rights and safety. As a result, Mlsna's and each of the prospective class's members are entitled to punitive damages.

## COUNT II
## VIOLATIONS OF 42 U.S.C. § 12101, *et seq*.
## DISPARATE IMPACT

47. Union Pacific was Mlsna and each of the prospective class's members "employer" within the ADA's meaning.

48. Mlsna and each of the prospective class's members are disabled within the ADA's meaning.

49. Mlsna and each of the prospective class's members are qualified individual within the ADA's meaning.

50. Section 12112(a) of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

51. Section 12112(b)(3) of the ADA defines "discriminat[ing] against a qualified individual on the basis of disability" as including "utilizing standards, criteria, or methods of administration . . . that have the effect of discrimination on the basis of disability".

52. Section 12112(b)(6) of the ADA defines "discriminat[ing] against a qualified individual on the basis of disability" as including "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position and is consistent with business necessity."

53. Union Pacific discriminated against Mlsna and each of the prospective class's members on the basis of disability when it used its companywide policy of prohibiting

9

employees with hearing aids from holding positions that require hearing protection, which tends to screen out employees with disabilities and is not job-related and consistent with business necessity, to remove them from service.

54. Because Union Pacific violated 42 U.S.C. § 12112, Mlsna and each of the prospective class's members are have suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Mlsna and each of the prospective class's members are also entitled to attorneys' fees and costs incurred in connection with these claims.

55. Union Pacific committed the above-alleged facts with reckless disregard or deliberate disregard for Mlsna's and each of the prospective class's members' rights and safety. As a result, Mlsna's and each of the prospective class's members are entitled to punitive damages.

### REQUEST FOR RELIEF

56. Mlsna requests that the Court find Union Pacific acted in direct violation of the ADA.

57. Mlsna further requests that the Court order Union Pacific to:

- reinstate him;

- clear and/or expunge any record of misconduct by him regarding the incidents described herein;

- pay to him an award for compensatory damages arising from loss of income and benefits in an amount to be determined by the trier of fact;

- pay to him an award for garden-variety emotional distress in an amount in excess of $75,000.00;

- pay to him an award for costs (including litigation and expert costs), disbursements, and attorneys' fees; and

- pay to him an award for $300,000 for punitive damages for each violation of the ADA.

58. Mlsna further requests that the Court order judgment against Union Pacific for all other relief available under the ADA and such other relief as the Court deems just and equitable.

Dated: January 18, 2018

/s/ *Nicholas D. Thompson*
Nicholas D. Thompson (WI#1078903)
nthompson@moodyrrlaw.com
THE MOODY LAW FIRM, INC.
500 Crawford St., Suite 200
Portsmouth, VA 23704
Telephone: (757) 393-4093
Fax: (757) 397-7257

*/s/ Thomas W. Fuller*
Thomas W. Fuller (MN #0394778)
tfuller@hlklaw.com
HUNEGS, LeNEAVE & KVAS, P.A.
1000 Twelves Oaks Center Drive
Suite 101
Wayzata, MN 55391
Telephone: (612) 339-4511

**ATTORNEYS FOR PLAINTIFF**