IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MARK MLSNA,

                              Plaintiff,                        OPINION AND ORDER

v.

                                                               18-cv-37-wmc

UNION PACIFIC RAILROAD CO.,

                              Defendant.

In this lawsuit, plaintiff Mark Mlsna contends that defendant Union Pacific Railroad violated the Americans with Disabilities Act by declining to recertify him as a train conductor in early 2015. Presently before the court are: (1) defendant's motion to strike plaintiff's expert witnesses identified as falling under Rule 26(a)(2)(C), having failed to produce written expert reports (dkt. #25); and (2) plaintiff's motion to strike defendant's experts for failure to comply with Rule 26(a)(2)(B) disclosure requirements (dkt. #35). In light of the impending dispositive motions deadline, the court ordered expedited briefing and held a telephonic motion hearing on January 24, 2019, at which counsel for both sides appeared. This opinion serves to memorialize the court's rulings.

I. **Defendant's Motion to Strike (dkt. #25)**

On October 19, 2018, plaintiff's counsel took the deposition of John Holland, Union Pacific's in-house doctor who was ultimately responsible for rejecting plaintiff's proposed accommodation. (Dkt. #34 at 3.) During his deposition, Holland explained that he rejected plaintiff's suggested earplugs accommodation in part on the advice of a Union Pacific industrial hygienist who told him that the noise-reduction rating (NRR)

could not be obtained for custom-fit devices. (*Id.*) Mlsna's counsel reached out to E.A.R., Inc. about Holland's statements within a week of receiving the Holland deposition transcript.[1] (*Id.*) The E.A.R., Inc. employees told plaintiff's counsel that E.A.R., Inc.'s custom-fit devices *do* have noise-reduction ratings and that other ways exist to test its ability to dampen sound.

The next day, November 14, 2018, plaintiff's counsel informed defense counsel of the conversation and believed that the employee of E.A.R., Inc. "and a coworker he identified need to be disclosed." (*Id.*; dkt. #26-1 at 1.) Attached to that email, is a document titled "Plaintiff's Rule 26(a)(2)(C) Disclosures," which state that "[e]mployees of EAR Inc., including Andrew Gordon and Garry Gordon, are expected to offer opinions regarding whether their company's products would have allowed Mlsna to perform his job's essential functions." (Dkt. #26-1 at 3 (capitalization altered).)[2] Likewise, the disclosure summarizes their expected testimony as being "based upon the details of all analyses, appraisals, assessments, evaluations, reviews, studies and tests of their company's productions that would have allowed Mlsna to perform his job's essential functions." (*Id.*)

Defendant seeks to preclude these experts from testifying because plaintiff refused to provide expert reports and thereby failed to comply with the expert disclosure rules

---

[1] Defendant convincingly argues that Holland's deposition was not the first time that plaintiff learned that the lack of NRR was why his proposed modification was rejected. (*See* dkt. #37 at 1-5.)

[2] Rather confusingly, the disclosure contains the line: "Dated: January 9, 2019," but the certificate of service is dated November 14, 2018, just like the cover email. (Dkt. #26-1 at 1, 3, 4.)

under Rule 26(a)(2)(B). (Dkt. #25 at 4.)[3] Not surprisingly, plaintiff opposes this motion, contending that E.A.R., Inc. employees are "hybrid fact-and-expert witnesses who need not provide a report" because plaintiff: (1) "has neither offered to compensate E.A.R., Inc.'s employees for their testimony nor provided them any materials to review"; and (2) has "[m]erely asked them about the specifications of the devices they manufacture." (Dkt. #34 at 2-3.) Plaintiff explains that the E.A.R., Inc. employees know about NRRs and other ways of measuring sound dampening from their work manufacturing custom-fit devices, making them "fact witnesses who happen to be experts." (*Id.* at 5.)

Rule 26(a)(2)(B) requires that expert disclosure "be accompanied by a written report . . . if the witness is one retained or specially employed to provide expert testimony" and specifies exactly what must be included within that report. Fed. R. Civ. P. 26(a)(2)(B). Experts who fall outside Rule 26(a)(2)(B) are subject to the more lenient disclosure obligations of Rule 26(a)(2)(C) as they need only disclose: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). As this court has previously explained, "the report requirement does not turn on whether the expert agrees to offer his or her services without compensation" but "rather, the application of Rule 26(a)(2)(B) depends on the expert's

---

[3] At this point, defendant contends that it would not have objected to these experts -- despite their allegedly belated disclosure -- if only plaintiff had complied with Rule 26(a)(2)(B). (Dkt. #25 at 3.) However, this is somewhat undercut by the fact that plaintiff made the challenged disclosure on November 14, 2018, while defendant did not raise its argument about the disclosure's insufficiency until January 4, 2019 -- nearly two months later and only weeks before summary judgment, making the motion appear more tactical than anything else.

relationship to the issues in the lawsuit and whether his or her relationship developed prior to the commencement of the lawsuit." *Brainstorm Interactive, Inc. v. School Specialty, Inc.*, No. 14-cv-50-wmc, 2014 WL 5817327, at *3 (W.D. Wis. Nov. 10, 2014) (Conley, J.). Union Pacific argues that nothing shows that the Gordons "have lay knowledge of the facts underlying the issues in this case or had any pre-existing relationship with Plaintiff." (Dkt. #25 at 8.) However, that is not the end of the inquiry. As noted, plaintiff contends these experts have relevant information from their work for E.A.R., Inc. (Dkt. #34 at 5.)

Where an expert witness has "formed his opinions in the normal course of his work," instead of being "asked to reach an opinion in connection with specific litigation," the expert is not subject to Rule 26(a)(2)(B). *B.H. ex rel. Holder v. Gold Fields Mining Co.*, No. 04-cv-0564-CVE-PJC, 2007 WL 128224, at *3 (N.D. Okla. Jan. 11, 2007) (cited by *Brainstorm*, 2014 WL 5817327, at *3); *see also Ind. Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 370-71 (7th Cir. 2017) (explaining that expert reports under Rule 26(a)(2)(B) were not required for hybrid fact/expert witnesses because witnesses were testifying to their personal knowledge through work on project); *Lamphear v. Spoden*, No. 17-cv-651-jdp, 2018 U.S. Dist. LEXIS 121173, at *3-*4 (W.D. Wis. July 18, 2018) (holding that hybrid witnesses were not subject to Rule 26(a)(2)(B) "[a]s long as [they] are only providing expert opinions that they formed during their prior involvement with [plaintiff] and the facts of this case"). This court recognized this in *Brainstorm*, noting that two of the challenged experts "appear[ed] to [have] knowledge separate from this litigation," making those experts as to those "few topics" not "retained" under Rule 26(a)(2)(B). 2014 WL 5817327, at *3.

Accordingly, plaintiff's experts Andrew and Garry Gordon may testify to their personal knowledge of E.A.R., Inc.'s analyses of the earplugs -- basically, any information that they acquired in the regular performance of their duties for E.A.R., Inc. -- but that is all.[4] They may not testify to any opinions reached for the first time at the prompting of plaintiff's counsel or in conjunction with this lawsuit, including whether an accommodation using E.A.R., Inc.'s earplugs would in fact satisfy defendant's requirements when it comes to plaintiff's condition in particular. Plaintiff represents that this will not be a problem. (*See* dkt. #34 at 5 (explaining that E.A.R., Inc. employees were not asked to review anything).)

As Union Pacific also argues, it "has no way of knowing what testimony the E.A.R. employees will provide." (Dkt. #25 at 9.) Part of that blame falls on Union Pacific for sitting on its concerns for nearly two months after first learning of plaintiff's intent to call the Gordons, both in (1) failing to depose them and (2) not raising this issue with the court earlier. That said, Union Pacific would have an uphill battle at summary judgment if it has no way to predict the evidence plaintiff may rely on in opposition since plaintiff's Rule 26(a)(2)(C) disclosure only details that the Gordons "are expected to testify based upon the details of all analyses, appraisals, assessments, evaluations, reviews, studies and tests of their company's productions that would have allowed Mlsna to perform his job's essential functions." (Dkt. #26-1 at 3.) Accordingly, Union Pacific may have two weeks to depose the Gordons. Additionally, plaintiff's counsel is to provide a summary of all opinions they

---

[4] At this late date, plaintiff is also precluded from offering the expert testimony of other, unidentified "[e]mployees of EAR, Inc." (Dkt. #26-1 at 3.)

5

expect to elicit from the Gordons at least five days before those depositions. *See B.H. ex rel. Holder*, 2007 WL 128224, at *4-*5 (concluding that expert who was not subject to the requirements of Rule 26(a)(2)(B) should *still* "submit an expert report disclosing the substance of his expert opinions that he intends to give at trial"); Fed. R. Civ. P. 1 (rules are to be administered "to secure the just, speedy, and inexpensive determination of every action"). At summary judgment and, if necessary, trial, the Gordons will be limited to the opinions disclosed in this summary.

The court has already told the parties that the June trial date is *not* moving and that there is no slack in the trial schedule with the summary judgment deadline on February 1. (Dkt. #22.) The dispositive motions deadline, however, must move to permit this additional discovery. Accordingly, the pretrial schedule is revised as follows:

- Gordons Deposition Deadline:	February 7, 2019[5]
- Dispositive Motions Deadline:	February 18, 2019
- Responses:	March 6, 2019
- Replies:	March 13, 2019

All other dates remain unchanged. The parties should expect a summary judgment decision on the eve of trial.

**II. Plaintiff's Motion to Strike (dkt. #35)**

Next, plaintiff's motion to strike targets two defense experts: (1) John Holland, Union Pacific's company doctor, who rejected plaintiff's reasonable accommodation

---

[5] Plaintiff was advised that this deposition deadline would not move absent extraordinary good cause and that he had until tomorrow to advise the court if such existed.

request; and (2) Sigfrid Soli, Union Pacific's outside audiology expert, arguing their Rule 26(a)(2)(B) disclosures are inadequate. Accordingly, he seeks exclusion of some of these experts' opinions until: their disclosures are supplemented; plaintiff is fitted with a custom-fit device and the device is tested; his experts have the opportunity to supplement their reports; and he has the opportunity to re-depose Holland and Soli. (Dkt. #35 at 3.)

Rule 26(a)(2)(B) instructs what must be included in an expert's written report: "a complete statement of all opinions . . . and the basis and reasons for them"; "facts or data considered"; summary or supporting exhibits; the expert's qualifications, including publications from the past decade and prior expert experience in the past four years; and a compensation disclosure. Fed. R. Civ. P. 26(a)(2)(B). "Rule 26 is designed to avoid surprise and give the opposing party a full opportunity to evaluate the expert's methodology and conclusions and to respond appropriately." *Gicla v. U.S.*, 572 F.3d 407, 411 (7th Cir. 2009). If violated, exclusion under Rule 37 "is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) (citing *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996)). That said, *Salgado* recognizes that "less severe" sanctions are available, such as restricting an expert to testifying to the incomplete opinions contained in his report. *Id.* at 741 n.6.

A. Holland

First, plaintiff contends that Holland's report does not contain any opinions, but rather refers to Union Pacific documents, which do not explain the basis for Union Pacific's conclusion that plaintiff needed to wear hearing protection or protection that dampens

7

sound by any specified amount. (Dkt. #35 at 8.) However, as defendant correctly points out (dkt. #42 at 3-4), challenging Holland's Rule 26(a)(2)(B) disclosure as inadequate is dubious on its face, since Holland was the decisionmaker regarding plaintiff's requested accommodation -- making him a hybrid fact/expert witness at worst and analogous to a treating physician at best.[6] Accordingly, his reliance on prior memorializations of his opinions in the "Opinion Regarding Mark Mlsna" section of his report does not warrant further comment, as the entirety of his opinions are encompassed in the attached documents.[7]

Second, contrary to plaintiff's allegation, the documents *do* provide the basis and rationale for the opinions stated therein.[8] For example, the June 9, 2017 letter explains *why* plaintiff needed to use hearing protection. (Dkt. #35-6 at 29 ("The UPRR hearing conservation program requires all employees to wear approved hearing protection in identified hearing protection areas, and as specified in departmental instructions."); *id.* (explaining that amplified hearing protective devices (AHPDs) may be used by employees

---

[6] Defendant also contends that it provided a Rule 26(a)(2)(B) report for Holland because his duties as Union Pacific's chief medical officer "might 'regularly involve giving expert testimony.'" (Dkt. #42 at 2.) However, as explained above, the court need not determine the substance of that assertion.

[7] This section of his report states: "[t]he memoranda attached to this letter as Exhibit B provide a description of the opinions I have regarding Mr. Mlsna's work restrictions imposed by his health condition that impacted his ability to perform the essential functions of the Conductor position." (Dkt. #35-6 at 2.)

[8] While plaintiff identifies two opinions in the attached documents that lack bases -- plaintiff contends that the documents do not "identify a basis for anyone to conclude that Mlsna need[ed to] wear any hearing protection whatsoever, much less that he need[ed to] wear hearing protection that dampens sound by some specified amount" (dkt. #35 at 2) -- both concern matters that are more appropriate for criticism at trial.

with significant hearing loss); *id.* at 30 ("All UPRR train crew members are required by FRA hearing conservation regulations to use adequate hearing protection in areas where potentially injurious noise exposure can occur.").) There is also a basis in these documents for a *specific* amount of hearing dampening. (Dkt. #35-6 at 29 (explaining that Union Pacific-approved AHPDs "provid[e] adequate hearing protection as is required by FRA regulations" and "prevent sounds louder than 85 decibels from reaching the person's external ear canal and ear drum"); *see also id.* at 32 ("Union Pacific no longer authorizes the fitting for and use of custom molded ear plugs, due to the uncertainty of the NRR"). Defendant notes that the Federal Railway Act regulation detailing hearing protective device attenuation is found at 49 C.F.R. § 227.117.[9] (Dkt. #42 at 6 n.4.)

Finally, plaintiff contends that Holland "admitted that he does not have the expertise necessary to give the opinions in his disclosure," but is rather "simply parroting" the reasoning of Union Pacific's industrial hygienist. (Dkt. #35 at 8-9.) Like plaintiff's other concerns, this too is overblown. The *only* portion of Holland's deposition cited by plaintiff involves Holland explaining that his opinion is that a device must be "laboratory tested," with "a set noise reduction rating on it," so that "a device that doesn't have that is not one that we can consider safe for use on the railroad." (Dkt. #34-1 at 26:16-27:4.) This concern, if anything, goes to the weight of Holland's testimony, not its admissibility. Holland really is acting as a fact witness, explaining how *he* came to the conclusion about plaintiff's requested accommodation. To the extent that this strays into expert testimony,

---

[9] The regulation provides that: "Hearing protectors shall attenuate employee exposure to an 8-hour TWA of 90 decibels or lower, as required by § 227.115." 49 C.F.R. § 227.117(b). The appendix cited by § 227.115 details how to calculate permissible noise exposures.

defendant may lay a foundation that industrial hygienist opinions are reasonably relied upon by occupational medicine doctors. *See* Fed. R. Evid. 703; *Noble v. Sheahan*, 116 F. Supp. 2d 966, 970 (N.D. Ill. 2000) (explaining that "[w]hether [expert's] reliance on [other's] opinions was reasonable is an issue for the trier of fact to decide at trial"). Accordingly, plaintiff's motion to strike Holland is DENIED.

**B. Soli**

As to Soli, plaintiff contends that his disclosure is also inadequate. As an initial matter, he complains that Soli's report does not contain all of his opinions because he testified beyond his report at his deposition when shown that custom-fit devices can have NRRs and was asked about other ways to measure noise dampening. Specifically, plaintiff contends that "Soli tried to save his opinions by testifying that such NRRs do not apply when the devices' electronics are on and that the other methods by which a device's ability to dampen sound require that Mlsna actually be fit for and tested with the device on." (Dkt. #35 at 9.) Defendant responds that "Dr. Soli had never seen this supposed evidence before, nor had Mlsna produced it in discovery."[10] (Dkt. #42 at 10.)

Regardless, Soli was responding to questions asked by plaintiff's counsel. Those answers do not expand his opinions. He, like all other experts in this case, will be limited to the opinions detailed in his report. Further, it is unclear how far the deposition testimony actually departs from Soli's report. In his report, Soli opines that "even if [plaintiff's proposed accommodation] were a passive device, it would be difficult, if not

---

[10] Defendant notes that some of this "supposed evidence" had not even been seen by plaintiff's counsel before the deposition. (Dkt. #42 at 10.)

10

impossible, to obtain an accurate NRR that could be broadly applied since each device is custom-made to fit the individual's ear" because "[t]he mass and volume of such a custom device, as well as the snugness of its fit in the ear canal, all of which affect the NRR, could vary widely for different users." (Dkt. #35-7 at 4.) This eviscerates much of plaintiff's argument about a failure to disclose and the appropriate remedy. Plaintiff has been in possession of Soli's report since mid-October and the report noted that the NRR would vary based on the individual's ear and the device's fit, suggesting that individualized testing would be necessary.

Next, plaintiff complains that Soli fails to disclose the basis for two of his opinions: (1) that Union Pacific permits employees to wear hearing protection with "appropriately determined NRR" of 30 decibels; and (2) custom-fit devices cannot have NRRs due to their customized nature and use of electronics. (Dkt. #35 at 10.) As to the first, plaintiff argues that Soli was never provided the dosimetry, so that even if he had provided a basis the opinion would be inadmissible because he lacked the data to determine if Mlsna's job exposed him to dangerous noise / how much noise dampening was necessary. (*Id.* at 2, 10.) As to the second, plaintiff contends that Soli has admitted he lacks a basis for this opinion. (*Id.* at 2.) Defendant responds that "a cursory reading of the report shows" that "Soli thoroughly explains over five pages the 'how' and 'why' he reached his conclusions." (Dkt. #42 at 11.)

Both of these opinions appear to be based on Soli's extensive experience in the field of audiology. As to the first, Soli explains that Union Pacific selected the ProEars as hearing protection "primarily because it has an appropriately determined NRR (30 dB). An

11

appropriately determined NRR for HPDs is required by NIOSH to ensure that the [time-weighted average] noise exposure levels at the ear when wearing HPDs are safe." (Dkt. #35-7 at 4.) He is not opining that Union Pacific's conclusion that 30 dB was appropriate; rather, he is opining that "[a]n appropriately determined NRR" is necessary to comply with applicable safety standards and that as a matter of fact Union Pacific set the NRR threshold at 30 dB. (*See id.* at 3 ("Knowledge of the NRR for HPDs . . . is necessary to determine whether the hearing protection they provide is adequate."); *see also* dkt. #42 at 11 ("Dr. Soli's reference to an 'appropriately determined' NRR simply means that an NRR is *determinable* in the first place . . . .").) Likewise, whether he needed the dosimetry data to arrive at this opinion goes to weight not admission and is an appropriate topic for cross-examination.[11]

As to the second, Soli explains why custom-fit devices would not be subject to the ANSI standard for NRR calculation and why the NRR would differ based on the user. (*Id.* at 4.) These opinions likewise seem to be based on Soli's experience and knowledge of his field. While plaintiff contends that Soli "admitted" at his deposition to lacking a basis for expressing this opinion, the court still has not been provided a copy of this excerpt from the deposition transcript.[12] Accordingly, plaintiff's motion to strike Soli's report is

---

[11] Further, as defendant notes, it "did not disclose Dr. Soli to opine on either the necessity of hearing protection in the railroad environment or the degree of protection required." (Dkt. #42 at 12.) Regardless, plaintiff's counsel acknowledged that defendant recently produced the dosimetry data.

[12] The court understands that plaintiff did not have access to the Soli deposition transcript when he filed his motion and that the transcript has since been provided. While skeptical of this argument because of plaintiff's other assertions, if plaintiff promptly provides the appropriate citation, the court will reconsider its decision.

DENIED.

ORDER

IT IS ORDERED that:

1) Defendant's motion to strike (dkt. #25) is DENIED.

2) The pretrial schedule is amended as set forth above.

3) Plaintiff's motion to strike (dkt. #35) is DENIED.

4) Defendant's motion for leave to clarify the factual record (dkt. #37) is GRANTED.

Entered this 24th day of January, 2019.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge