IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MARK MLSNA,

        Plaintiff,

v.

UNION PACIFIC RAILROAD COMPANY,

        Defendant.

OPINION AND ORDER

18-cv-37-wmc

Plaintiff Mark Mlsna filed suit against his former employer, Union Pacific Railroad Company, alleging that its refusal to recertify him as a train conductor violated the Americans with Disabilities Act (the "ADA"). (*See* Am. Compl. (dkt. #3).) In May, the court granted defendant's motion for summary judgment, concluding that a reasonable jury could not find that plaintiff was capable of fulfilling the essential functions of his position, even with a reasonable accommodation. (*See* Summ. J. Op. (dkt. #97) 1.) Presently before the court is plaintiff's motion for reconsideration under Fed. R. Civ. P. 59(e), filed after the Federal Railroad Association (the "FRA") concluded that Union Pacific should not have revoked his conductor certification. (Mot. Recons. (dkt. #102) 1.) For the reasons set forth below, plaintiff's motion must be denied.

OPINION

Before the court can consider whether the FRA's decision warrants reconsidering, the court must initially address defendant's jurisdictional challenge. (Opp'n (dkt. #112) 3-4.) Specifically, defendant contends that the plaintiff's "filing of a notice of an appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control

over those aspects of the case involved in the appeal." (*Id.* at 3 (quoting *United States v. Ali*, 619 F.3d 713, 722 (7th Cir. 2010).)  However, plaintiff's Rule 59(e) is an exception to this general rule.  *See Myles v. Gupta*, No. 14-cv-661-bbc, 2016 WL 2859092, at *1 (W.D. Wis. May 16, 2016) (explaining that a Rule 59(e) motion "'suspends' the appeal and deprives the court of appeals of jurisdiction until the district court enters an order disposing of the motion" (internal citations omitted)); *see also Siddique v. Laliberte*, 15-CV-1-JPS, 2019 WL 3225746, at *1 n.1 (E.D. Wis. July 16, 2019) (explaining that a district court could address plaintiff's motion for reconsideration because it "retains jurisdiction to take additional action in aid of the appeal");[1] *Dye v. Bartow*, No. 13-cv-284-bbc, 2013 WL 5295690, at *1 (W.D. Wis. Sept. 19, 2013) ("Ordinarily, the filing of a notice of appeal divests the district court of its control over those aspects of the case involved in the appeal. However, where a party files a timely notice of appeal and a timely Rule 59(e) motion, the notice becomes effective only after the court has disposed of the Rule 59(e) motion." (internal citations and quotation marks omitted)).[2]  Confident in its jurisdiction, the court will proceed, therefore, to address plaintiff's request for reconsideration on its merits.

Deciding "a motion for reconsideration is left to the discretion of the district court." *Caisse Nationale de Credit Agricole v. CBI Inds., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (citing *Billups v. Methodist Hosp.*, 922 F.2d 1300, 1305 (7th Cir. 1991)).  "Reconsideration

---

[1] In *Sidduque*, the Eastern District of Wisconsin also noted that the Seventh Circuit requested status updates on the plaintiff's motion for reconsideration, further suggesting that the district court retained jurisdiction.  2019 WL 3225746, at *1 n.1.

[2] Even if this court were not convinced of its jurisdiction, or the motion, plaintiff's recent voluntarily dismissal of his appeal has essentially mooted the issue.  (Appeal Order (dkt. #114) 1.)

is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Id.* (citations omitted). Instead, "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* at 1269 (quoting *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984)). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

Plaintiff argues that "the FRA's findings warrant the Court not only reconsidering its order on Union Pacific's motion for summary judgment [as a manifest error] but also . . . *sua sponte* granting summary judgment to Mlsna" since Union Pacific should be precluded from making the very arguments that this court found persuasive. Alternatively, plaintiff argues that the FRA's findings constitute "new evidence that could cause a reasonable person to find that Mlsna is not a direct threat." (Mot. Recons. (dkt. #102) 5-7.) Plaintiff's arguments reflect a misunderstanding as to the issue before this court and the import of the FRA's decision.

As an initial matter, plaintiff's motion for reconsideration is not a vehicle for the court to grant a motion for summary judgment he never pursued. Rather, it is simply a request for the court to reconsider its original decision in light of the FRA's June 4, 2019, decision. As explained at summary judgment, the question for this court was whether plaintiff had produced enough evidence for a reasonable jury to conclude that he had made

his prima facie case under the ADA. (Summ. J. Op. & Order (dkt. #97) 13-14.) Because the court found that he had failed to make this showing, it never addressed plaintiff's contention that he was not a direct threat. (*Id.* at 1 n.1.) Accordingly, plaintiff's motion for reconsideration based on an argument that the plaintiff is not a direct threat misses the point.

While the FRA's decision is critical of Union Pacific for "grossly" misrepresenting "the undisputed facts and FRA's hearing acuity requirements," that decision has no bearing on the award of summary judgment as to whether Union Pacific violated the ADA, unless Union Pacific were shown to have done the same in presenting material facts or FRA regulations to this court. Instead, the FRA's review was limited to whether Union Pacific acted in accordance with 49 C.F.R. § 242. (FRA Decision (dkt. #106) 1.) Accordingly, different standards applied.

Ultimately, the FRA concluded that Union Pacific's failure to recertify plaintiff was "improper for several reasons": (1) Dr. Holland in his communications with Mlsna -- and Union Pacific in its communications with the FRA -- "misrepresented a more stringent company policy as FRA's hearing acuity standards"; (2) Holland's misrepresentation of that policy "as a medical opinion suggests that the more stringent policy . . . may be inconsistent with the regulation"; and (3) Union Pacific failed to present Mlsna with a document stating that he met the FRA requirements with his hearing aids following his first hearing test on January 8, 2015. (*Id.* at 4.) In contrast, at summary judgment, there was no dispute that plaintiff met the FRA requirements with his hearing aids. (*See* Summ. J. Op. & Order (dkt. #97) 7 ("Mlsna only met the minimum FRA hearing criteria when

4

tested with his hearing aids and no AHPD."); *id.* at 19-20 (same).) Rather, the dispute before this court focused on "whether hearing protection is an essential function of [plaintiff's] position." (*Id.* at 15.) The court concluded that it was (or at least that Union Pacific had a reasonable basis to require the use of hearing protection), and that plaintiff had failed to identify a reasonable accommodation that would allow him to meet the FRA requirements while wearing hearing protection. (*Id.* at 18, 22-23.)

Additionally, the court is simply not convinced by the FRA's findings as to Dr. Holland's "misrepresentations." The January 16, 2015 letter from Holland stated accurately that Mlsna's "[fitness for duty] evaluation was initiated because a recent hearing test showed [his] *unaided hearing* did not meet Federal Railroad Administration (FRA) minimum hearing standards for conductors."[3] (Jan. 16, 2015 Letter (dkt. #53-4) 1 (emphasis added).) It likewise noted accurately that Mlsna could not "meet the FRA minimum hearing standard . . . with the use of UPRR approved Amplified Hearing Protection Devices." (*Id.*) That same letter separately explains that the "FRA minimum hearing standard requires a Conductor to have an average hearing threshold (at 500, 1000 and 2000 hertz) of no greater than 40 decibels in the better ear either with unaided hearing or when using a hearing amplification device," which tracks the regulatory requirements.[4]

---

[3] While the FRA initially refers to the January 30, 2015 letter, it actually is concerned about the January 16, 2015 letter, which was enclosed in the January 30 letter. (*Cf.* Jan. 30, 2015 Letter (dkt. #57-2); Jan. 16, 2015 Letter (dkt. #53-4).)

[4] The regulation requires conductors to

> have a hearing test or audiogram that shows the person's hearing acuity meets or exceeds the following thresholds: The person does not have an average hearing loss in the better ear greater than 40 decibels with or without use of a hearing aid, at 500 Hz, 1,000 Hz,

(*Id.*)  Ultimately, Union Pacific's letter contains a separate section explaining Union Pacific's hearing policy, and its reliance on noise reduction ratings (*id.* at 2), concluding with an explanation as to how the FRA requirements interact with Union Pacific's stronger hearing policy.  Union Pacific's failure to provide plaintiff with a certificate is irrelevant to his ADA claim. Whether or not these representations were in any way misleading for the FRA's purposes -- and it is hard to see how they were -- Union Pacific did not mislead this court on summary judgment, either in terms of the facts or the law.

Finally, whether or not the FRA's apparent ruling under its own regulations could bind this court under other circumstances, plaintiff's argument for issue preclusion is fundamentally flawed because this court's decision *predates* the FRA's determination.  *See Northern States Power v. Bugher*, 189 Wis.2d 541, 550, 525 N.W.2d 723, 727 (1995), ("Issue preclusion refers to the effect of a judgment in foreclosing relitigation *in a subsequent action* of an issue of law or fact that has already been litigated and decided in a prior action." (internal citation omitted) (emphasis added)).  The doctrine of issue preclusion does not apply a later decision to an earlier proceeding.  Accordingly, defendant cannot be retroactively precluded from making its previously successful summary judgment argument.  Nor is a later, administrative ruling -- even if arguably inconsistent with this court's opinion -- "new evidence" at least requiring reconsideration in this case. [5]

---

and 2,000 Hz.

49 C.F.R. § 242.117(i).

[5] Similarly, nothing in this decision or the court's earlier grant of summary judgment precludes the FRA from reinstating plaintiff's conductor certification if found to be appropriate under its own regulations and case law.

ORDER

IT IS ORDERED that: plaintiff's motion for reconsideration (dkt. #102) is DENIED.

Entered this 23rd day of August, 2019.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge