# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MARK MLSNA, | |
| Plaintiff, | CASE NO. 3:18-cv-00037 |
| v. | PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| UNION PACIFIC RAILROAD COMPANY, | |
| Defendant. | |

## INTRODUCTION

Union Pacific rehashes its meritless argument that Mlsna is precluded from proceeding to trial on his claim. Its argument is both procedurally barred and substantively wrong. On the procedure, Union Pacific had an obligation to fully develop all of its arguments in support of affirmance—including the one it raises here—before the Seventh Circuit. It failed to do so, and that failure is dispositive. On the merits, Union Pacific's point is both factually and legally flawed. Mlsna always maintained that he was able to operate as a conductor. And in any event, none of the elements of judicial estoppel are satisfied because Mlsna never made any definitive assertion that was accepted by any court or agency.

Union Pacific's motion should be denied.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S PROPOSED STATEMENT OF UNDISPUTED MATERIAL FACTS

1. In 2015, Union Pacific determined that Mark Mlsna ("Mlsna") was not qualified to perform the job of a Train Conductor because he could not meet the Federal Railroad Administration's minimum hearing standards with unaided hearing or wearing an approved amplified hearing protection device.

**Mlsna disputes the proposed fact insofar as it implies that he was not, in fact, qualified to perform his job's essential functions.** *See Mlsna v. Union Pac. R.R. Co.*, **975 F.3d 629, 633-39 (7th Cir. 2020). Mlsna admits that Union Pacific made the determination that Mlsna was not qualified.**

2. After Union Pacific notified Mlsna that he was not qualified for the conductor position, Mlsna applied for disability benefits from the Railroad Retirement Board ("RRB").

   **Mlsna disputes the proposed fact insofar as it implies that he was not, in fact, qualified to perform his job's essential functions. Mlsna agrees that he applied for benefits from the RRB.**

3. On his application, Mlsna checked the box stating that he had a medical condition that prevented him from working as of January 8, 2015.

   **Mlsna does not dispute the proposed fact.**

4. Mlsna was asked to identify the "medical conditions causing [him] to file" for benefits, and he identified the loss of his right leg, hearing problems in both ears, high blood pressure, diabetes, an enlarged prostate, and high cholesterol.

   **Mlsna does not dispute the proposed fact.**

5. Mlsna stated that his conditions prevented him from working because he was "unable to jump from train to train because of loss of right leg, difficult bending-needs support, difficult to walk on tracks, especially uneven tracks, has to make sure he takes pills to keep the diabetes under control."

   **Mlsna does not dispute the proposed fact.**

6. The form asked, "Does your condition prevent you from working now?" and Mlsna checked the box marked "Yes."

2

**Mlsna does not dispute the proposed fact.**

7. Mlsna also checked the box indicating that a medical doctor, Dr. Jon Herath, has "restricted his daily activities."

**Mlsna does not dispute the proposed fact.**

8. When asked to describe the restriction, Mlsna stated that he is "Unable to do continuous bending or lifting, unable to jump from one car to another, avoid walking on uneven Tracks . . . ."

**Mlsna does not dispute the proposed fact.**

9. Mlsna certified that the information he provided to the RRB was correct under penalty of criminal punishment.

**Mlsna does not dispute the proposed fact.**

10. Mlsna later abandoned his application for RRB disability benefits because he learned he could obtain retirement benefits, which the RRB granted.

**Mlsna does not dispute the proposed fact.**

## PLAINTIFF'S PROPOSED STATEMENT OF UNDISPUTED MATERIAL FACTS

1. What an employee must prove to obtain the benefits for which Mlsna applied, occupational disability benefits from the RRB, is fundamentally different from what an employee must prove to obtain disability benefits from disability benefits from the Social Security Administration ("SSA"). *See*, *e.g.*, RRB, *Employee Disability Benefits*, Railroad Retirement Board, 6 (March of 2009), available at www.rrb.gov/sites/default/files/2017-04/RB-1D.pdf (last visited on January 7, 2021).

2. When making a disability determination, the RRB does not take into account whether a reasonable accommodation would allow an employee to perform his job's essential functions, *i.e.*, an employee may be disabled for RRB purposes but still a qualified individual within the ADA's meaning because a reasonable accommodation enables him or her to perform his or her job's essential functions. *See*, *e.g.*, *Mayo v. CONRAIL*, No. 96-656, 1999 U.S. Dist. LEXIS 22006, at *8 (W.D. Pa. June 23, 1999).

3. Mlsna abandoned his RRB application early in the process and without receiving any ruling on his entitlement to benefits. (Dkt. 27 at 15.)

4. In his withdrawn application, Mlsna disclosed that he could perform each of the fourteen daily living activities about which he was asked. (RRB Application (Dkt. 53-2 at 14-15.)

5. Moreover, Mlsna listed January 8, 2015 as the "date [his] condition began to affect [his] ability to work." Dkt. 53-2 at 10. This date coincides precisely with the date Mlsna was removed from service by Union Pacific because of his hearing disability. He received his official fitness-for-duty determination permanently barring him from work on January 16, 2015. Dkt 57-2 at 2. This date makes clear that Mlsna never considered himself unable to work until Union Pacific ruled that he was unable to work because of his hearing impairment.

6. In his withdrawn application, Mlsna disclosed that he intended to keep working. (Dkt. 53-2 at 15.) He explained that he intended to work for Pine Line, a farming business, "feeding beef cows." (Dkt. 53-2 at 15.)

## **LEGAL STANDARD**

Summary judgment is appropriate "only if there is no genuine issue of material fact and no reasonable jury could find for [Mlsna]." *Rowlands v. UPS*, 901 F.3d 792, 798 (7th Cir. 2018). The Court "view[s] all the facts and make all reasonable inferences in h[is] favor." *Id.* The Seventh

4

Circuit "ha[s] stressed in the past, and it is worth repeating, that a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts on summary judgment, and must avoid[ ] the temptation to decide which party's version of the facts is more likely true." *Id.* (quoting *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018)) (internal quotation marks omitted).

## PROCEDURAL HISTORY

Union Pacific hedges about the nature of its argument. This hedging has important consequences for determining whether Union Pacific's arguments are waived.

In its most recent motion for summary judgment, Union Pacific states that "Mlsna's sworn statement that he cannot work negates an essential element of his ADA claim that he is a qualified individual with a disability." (Dkt. 143 at 1.)

In a footnote, Union Pacific concedes that it made a different argument last time around. (Dkt. 143 at 1.) That's true. In its February 18, 2019 motion for summary judgment, it argued that the doctrine of judicial estoppel barred Mlsna's claim. (Dkt. 51 at 35.) In its reply memorandum, Union Pacific expanded its argument to claim, for the first time, that judicial estoppel notwithstanding, "Mlsna's RRB application negates an essential element of his ADA case": whether "he is qualified individual." (Dkt. 85 at 29-30 (cleaned up).)

In its summary judgment ruling, this Court indicated that it declined to consider Union Pacific's judicial estoppel argument: "Because defendant is entitled to summary judgment based on plaintiff's inability to make his prima facie case, the court need not address the parties' arguments about…judicial estoppel." (Dkt. 97 at 1.) This Court, of course, *did consider* whether Mlsna could perform his essential functions; indeed, that was the entire thrust of this Court's summary judgment order. (Dkt. 97.)

5

Union Pacific failed to raise *any* judicial estoppel argument before the Seventh Circuit. Its sole discussion of Mlsna's benefits was confined to a single footnote that solely claimed that Mlsna's benefits application negated his prima facie case. Union Pacific told the Seventh Circuit:

> Mlsna is also not qualified because he represented on his RRB benefits application under penalty of criminal punishment that his medical conditions prevent him from working. (D.E. 53-2 at 10 ¶¶ 6-13). *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 796 (1999) (holding that "[a]n ADA plaintiff's sworn assertion in an application.

Dkt. 25 at 47.

The Seventh Circuit disagreed and held, without explicitly discussing Mlsna's RRB benefits application, that fact questions existed about whether Mlsna was a qualified individual. *See Mlsna*, 975 F.3d 629. The Seventh Circuit did not sua sponte address Union Pacific's judicial estoppel argument.

## ARGUMENT

Union Pacific's claims are both waived and wrong on the merits.

With respect to waiver, Union Pacific had an obligation to raise all of its arguments in favor of affirmance before the Seventh Circuit. It failed to do so, relegating its point about Mlsna's benefits claim to a single footnote. And to the extent it did raise its argument, then the Seventh Circuit implicitly resolved the argument in holding that Mlsna was qualified. Relitigating that question here would violate the mandate rule. Either way, Union Pacific has put itself into a procedural checkmate.

Union Pacific's claim is equally unsupported on the merits. As the Supreme Court and Seventh Circuit have explained, because claims for disability benefits are markedly different than ADA claims, judicial estoppel does not bar subsequent ADA claims. And while sometimes information in an application for benefits may be relevant—or in rare cases even dispositive—to

6

the question of whether the plaintiff has stated a prima facie case, that is not true here. First, Mlsna's claim for benefits is not relevant. Union Pacific fired Mlsna because of his hearing impairment. Other impairments discussed in Mlsna's application that had nothing to do with Union Pacific's decision are irrelevant. Second, even if Union Pacific had relied on Mlsna's application, he was still qualified. Union Pacific's argument rests on a complex and erroneous application of federal regulations and company policies. It would be relevant if Mlsna stated in no uncertain terms that he could not hear well enough to do the job. Instead, his application merely reflected the reality that Union Pacific had disqualified him. Last, nothing in the application indicates that Mlsna was unqualified. He specifically indicated he could perform all fourteen functions he was asked about. And he specifically indicated he intended to continue working.

Union Pacific's motion for summary judgment should be denied.

**1. Legal Framework.**

Throughout the course of this litigation, Union Pacific has attempted to raise two separate arguments regarding Mlsna's claim for benefits: judicial estoppel and failure to state a prima facie case. These arguments are conceptually distinct. As the Seventh Circuit has explained, "[j]udicial estoppel of an ADA claim…is distinguishable from summary judgment against the plaintiff when factual assertions essential to the claim are undermined by the plaintiff's previous sworn statements." *Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 790 (7th Cir. 1999).

"The doctrine of judicial estoppel prevents a party from adopting a position in a legal proceeding contrary to a position successfully argued in an earlier legal proceeding." *Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 891 (7th Cir. 2005). It "is an equitable concept providing that a party who prevails on one ground in a lawsuit may not . . . in another lawsuit repudiate that ground." *Id.* (quoting *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999) (quoting *Ogden*

7

*Martin Systems of Indianapolis v. Whiting Corp.*, 179 F.3d 523, 526 (7th Cir. 1999))) (internal quotation marks omitted). There are therefore "certain clear prerequisites that must [be demonstrated] before judicial estoppel applies: (1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position." *1st Source Bank v. Neto*, 861 F.3d 607, 612 (7th Cir. 2017) (quoting *Hook*, 195 F.3d at 306 (quoting *Levinson v. United States*, 969 F.2d 260, 264-65 (7th Cir. 1992))) (internal quotation marks omitted).

Judicial estoppel, then, is not a creature of any substantive body of law. Rather, it stems from the court's equitable powers. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks omitted). The doctrine's "purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 749–50 (citation and internal quotation marks omitted).

Union Pacific's second argument—failure to state a claim—is much more straightforward. It simply asserts that Mlsna has not met his burden, in view of the summary judgment standard, of showing that he is a "qualified individual": someone "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position…." 42 U.S.C. § 12111(8). As the Seventh Circuit has repeatedly stated, "Whether a function is essential is a question of fact, not law." *Mlsna v. Union Pacific Railroad Co.*, 975 F.3d 629, 634 (7th Cir. 2020) (quoting *Tonyan v. Dunham's Athleisure Corp.*, 966 F.3d 681, 687 (7th Cir. 2020)).

The Supreme Court explored the interplay between judicial estoppel and failure to state a claim in *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999). *Cleveland* "explained that the mere act of applying for SSDI should not estop a plaintiff from making a subsequent ADA claim." *Feldman*, 196 F.3d at 790 (citing *Cleveland*, 119 S.Ct. at 1603).

"Sufficient divergence exists between the definitions of 'disability' under the ADA and SSDI that, in some circumstances, an individual can claim truthfully both that she is unable 'to engage in any substantial gainful activity' under SSDI but also a 'qualified individual with a disability' under the ADA." *Id.* The Supreme Court went on, however, to explain that unrebutted and unexplained assertion that a person is "unable to work" may warrant summary judgment in favor of the employer on an employee's ADA claim. *Id.* at 791. Such an assertion may "appear to negate an essential element of her ADA case—at least if she does not offer a sufficient explanation." *Cleveland*, 119 S. Ct. at 1603.

**I. Union Pacific's Argument Is Waived and Barred by the Mandate Rule.**

Procedurally, Union Pacific's argument is triply waived.

First, Union Pacific's current argument—that Mlsna's benefits application undermines his claim that he can perform the essential functions of the conductor position—was raised for the firm time in its summary judgment reply. "Arguments raised in a reply brief are waived for the purpose of summary judgment." *Arrigo v. Link Stop, Inc.*, 975 F. Supp. 2d 976, 989 (W.D. Wis. 2013). The only argument properly before this Court last time was Union Pacific's judicial estoppel claim. And Union Pacific does not make that argument now.

But Union Pacific's arguments are waived for another more fundamental reason. It should have, but did not, present them to the Seventh Circuit. Before the Seventh Circuit, Union Pacific relegated its argument to a single six-line footnote. Dkt. 25 at 47. That footnote made no mention of judicial estoppel; instead, it only claimed that Mlsna's benefits application supported Union Pacific's claim that Mlsna was not qualified. *Id.* This was not enough to raise the argument before the Seventh Circuit. Perfunctory or undeveloped arguments are deemed waived. *Colburn v. Trustees of Ind. Univ.*, 973 F.2d 581, 593 (7th Cir. 1992); *Hunter v. Allis–Chalmers Corp.*, 797

9

F.2d 1417 (7th Cir. 1986). "[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). And, of course, Union Pacific was presenting an argument that was *already waived* by raising it for the first time in its summary judgment reply. For these two reasons, and the Seventh Circuit was correct in declining to reach the issue.

Union Pacific had an affirmative obligation to fully marshal all of its alternative arguments supporting affirmance to the Seventh Circuit. Its failure to do so is decisive here. The mandate rule prohibits lower courts, with limited exceptions, from considering questions that the mandate of a higher court has laid to rest. *See Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)). "When matters are decided by an appellate court, its rulings, unless reversed by it or a superior court, bind the lower court." *Ins. Group Comm. v. Denver & Rio Grande W. R. Co.*, 329 U.S. 607, 612 (1947). The mandate rule not only bars lower courts from relitigating questions that were explicitly decided by the appellate court; "any issue that *could have been but was not raised* on appeal is waived and thus not remanded." *United States v. Husband*, 312 F.3d 247, 250–51 (7th Cir. 2002) (emphasis added); *see also S. Atlantic Ltd. P'ship of Tenn. v. Riese*, 356 F.3d 576, 584 (4th Cir. 2004) (stating that the mandate rule prohibits district courts from "reconsider[ing] issues the parties failed to raise on appeal").

Union Pacific cannot have it both ways. Failure to raise the issue entirely on appeal would have barred consideration on remand. *Husband*, 312 F.3d at 250–51. Marshalling a fully formed argument on the issue would have compelled the Seventh Circuit to address Mlsna's benefits application (or at least explain why the argument was waived). There is no daylight between these

two poles. A party cannot preserve an issue on remand by simply raising it in a perfunctory manner. Such arguments are just as waived as unraised arguments. *Colburn*, 973 F.2d at 593. And any argument that could have been raised but was not properly presented may not be relitigated under the mandate rule. *Sprague*, 307 U.S. at 168.

From the perspective of the Seventh Circuit's mandate, it doesn't matter whether Union Pacific is now arguing judicial estoppel, failure to state a claim, or both. Union Pacific could have raised its judicial estoppel argument to the Seventh Circuit but chose not to. It therefore cannot be relitigated here. *Husband*, 312 F.3d at 250–51. But the mandate rule applies with even greater force to any argument that Mlsna's benefits application demonstrated that Mlsna could not perform his essential functions. The Seventh Circuit *explicitly decided* that Mlsna *could* perform his essential functions. *Mlsna*, 975 F.3d at 631. District courts are not free to reverse appellate judgments on the grounds that the losing party feels that *each discrete subpart* of its argument was not carefully considered by the appellate court. Union Pacific argued to the Seventh Circuit (albeit in a cursory manner) that Mlsna's benefits application was evidence that he was not qualified. The Seventh Circuit held that fact questions precluded that holding. In all likelihood, as discussed above, the Seventh Circuit did not address the discrete point because it was already doubly waived on appeal. But the bottom line is this: the Seventh Circuit decided that there were fact questions on whether Mlsna could perform his essential functions. Union Pacific's present argument is that Mlsna's benefits application is one piece of evidence that supports the opposite conclusion. It made that point to the Seventh Circuit. This court cannot evaluate the merits of Union Pacific's present motion and grant the relief it seeks without running afoul of the Seventh Circuit's mandate. *Husband*, 312 F.3d at 250–51.

**II. Union Pacific's Judicial Estoppel Argument Is Wrong.**

On the merits, judicial estoppel does not bar Mlsna's ADA claim.

First, Mlsna didn't convince any court or agency to adopt any contrary opinion. *1st Source Bank*, 861 F.3d at 612. Unlike in most cases, Mlsna withdrew his application, which was for occupational-disability benefits from the RRB and not total-disability benefits from the SSA, before receiving any benefits. (*Supra* at Def. Prop. Fact Nos. #10.) Because he withdrew his application, Mlsna did not convince the RRB to adopt any position, which is a condition precedent for judicial estoppel. *See*, *e.g.*, *1st Source Bank*, 861 F.3d at 612.

Second, there is no inconsistency between Mlsna's RRB application and his ADA claim. *Id.* Mlsna checked a box indicating that he could "no longer work." Dkt. 53-2. But this is hardly an admission that he was not qualified. Union Pacific had just *refused to certify Mlsna as a conductor*. Mlsna's actions simply reflected that fact. It was never a guarantee that the courts or the FRA would reject Union Pacific's erroneous interpretation of the FRA regulations. Any claimed inconsistency is precisely the "sort normally tolerated by our legal system." *Cleveland*, 119 S.Ct. at 1603. "Our ordinary Rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to 'set forth two or more statements of a claim or defense alternately or hypothetically,' and to 'state as many separate claims or defenses as the party has regardless of consistency.'" *Id.* (citing Fed. Rule Civ. Proc. 8(e)(2)).

Moreover, a reasonable person could easily find that Mlsna took the positions in his withdrawn application in good faith and can nevertheless perform his job's essential functions. Mlsna's withdrawn application was for occupational-disability benefits from the RRB; whereas, the plaintiffs' applications in the cases to which Union Pacific cites were for total disability benefits from the SSA. (Compare *supra* at. Pl. Prop. Fact No. 2 *and Devine*, 49 F. App'x at 60-62;

*Lee*, 259 F.3d at 675; *Weigel*, 122 F. 3d at 463. What an employee must prove to obtain occupational-disability benefits from the RRB, is fundamentally different from what an employee must prove to obtain disability benefits from disability benefits from the SSA.

 Neither has Union Pacific cited to nor is Mlsna aware of any case in which a court has held that an employee's application for occupational-disability benefits from the RRB estops him or her from claiming that he or she is a qualified individual within the ADA's meaning. There are, however, cases in which courts have held the opposite. *Self v. BNSF Ry. Co.*, No. 14-cv-618, 2016 U.S. Dist. LEXIS 15500 (W.D. Tex. Feb. 8, 2016); *Mayo*, 1999 U.S. Dist. LEXIS 22006, and *Donahue v. CONRAIL*, 52 F. Supp. 2d 476 (E.D. Pa. 1999). The logic of the courts in these cases, which includes noting that the RRB does not take into account whether a reasonable accommodation would allow an applicant to perform his or her job's essential functions, is persuasive and should be adopted by this Court.

 This is especially true since this case's facts are plaintiff friendlier than were the facts of those cases. Mlsna not only withdrew his application before receiving benefits but also disclosed to the RRB in his application that he could perform each of the daily living activities about which he was asked. (*Supra* at Pl. Prop. Fact No. 4.) Mlsna also disclosed to the RRB in his application that he intended to continue working. (*Id.* at Pl. Prop. Fact No. 6.)

 At the end of the day, the very idea of inconsistency in a case like this one is hard to square with the facts of this case or Union Pacific's decision to decertify and terminate Mlsna. The essential functions analysis actually embraces two separate questions: first, whether a given job *requirement* is an essential function; and second, whether the employee can *perform* that function. Claims for benefits will be more relevant in cases that predominantly raise the second question. This is not a case, for example, where all agree that lifting 40 pounds is an essential function; and

the employee who is seeking disability benefits told a court (or agency) that he cannot lift anything over ten pounds. Such an employee would face an uphill battle at summary judgment. This case is the exact opposite. There is *no dispute* about how well Mlsna can hear. His audiological exams are in the record. The only question is whether Union Pacific's hearing-protection and hearing-exam policies are essential functions. Union Pacific's arguments don't rely on factual disputes about Mlsna's condition. They instead rely on a convoluted (and now discredited) series of regulatory interpretations, overbroad, empirically unsupported, and discriminatory company policies, and a refusal to lift a finger to accommodate a disabled employee to ultimately determine that Mlsna was not qualified. Mlsna had performed his job for a decade without any issue. He did not harbor any secret knowledge about his abilities. His benefits application logically reflects Union Pacific's decision and nothing more. Simply repeating that position does not prohibit Mlsna from challenging it in this Court as discriminatory.

Mlsna's benefits claim is also irrelevant. In employment discrimination cases like this one, only the employer's proffered reason for the adverse action is relevant. At least with respect to liability, so-called after-acquired evidence about an employee's fitness for work is entitled to no weight. *Rooney v. Koch Air, LLC*, 410 F.3d 376, 382 (7th Cir. 2005). This makes sense. Anti-discrimination laws exist to stamp out employment actions that were motivated by impermissible bias. If an employer terminated an employee because of his race, it is no answer that the employer learned six months later that the employee was violating a company rule. *Id.* The same holds true here. The high blood pressure, diabetes, and amputated leg Mlsna described in his benefits application are irrelevant because Union Pacific makes no claim that these conditions caused his termination. Even with respect to Mlsna's hearing, Mlsna's benefits application contains nothing Union Pacific didn't already know. It mentions "hearing problems." (Dkt. 53-2 at 10.) In light of

14

the extremely detailed audiological data Union Pacific had already gathered about Mlsna, this piece of evidence adds nothing to the essential-functions inquiry.

**III. Union Pacific's Essential Functions Argument Is Wrong.**

For much the same reasons, Union Pacific's essential functions argument is equally wrong.

Ultimately, Mlsna's benefits application says nothing about whether Union Pacific's essential functions argument is correct. To the extent any "explanation" is required, *Cleveland*, 119 S.Ct. at 1604, Mlsna's entire opposition to Union Pacific's original motion for summary judgment and Seventh Circuit briefs—which will not be rehashed in detail here—serve as one. Wearing hearing protection is not an essential function. It is not listed as such in Union Pacific's own job description. (Dkt. 51-2 at 1-2.) It is not a fundamental characteristic of the job. The requirement was not enforced in real life. (Dkt. 27 at 18.) And it is flatly contradicted by Union Pacific's own noise sampling data, which hasn't shown any unsafe noise exposure in decades. (Dkt. 53-5 at 1.)

Moreover, as the Seventh Circuit held, Union Pacific is on even shakier ground in its claim that passing the FRA hearing exam *while wearing hearing protection* is an essential function. That policy is discriminatory; non-hearing-impaired employees need not pass with hearing protection. (Dkt. 58-2 at 3.) Only uniformly enforced policies can plausibly qualify as essential. And Union Pacific's claim rested on a gross misinterpretation of the FRA regulations that it has now wisely abandoned. As the Seventh Circuit also held, under the plain text of the hearing acuity regulation, a person may pass the test with or without hearing aids. 49 C.F.R. § 242.117(i). Hearing protection is not required. *Id.*

These pieces of evidence confirm that Union Pacific enforced an overly broad, discriminatory, and unsupported set of policies that they unlawfully labeled essential functions.

Mlsna's statement in his benefits application that he was unable to work as a conductor changes none of this.

## **CONCLUSION**

Union Pacific's motion for summary judgment should be denied.

Dated: January 7, 2021

Respectfully submitted:

s/ Nicholas D. Thompson
Nicholas D. Thompson, Esq.
 (MN #1078903)
THE MOODY LAW FIRM, INC.
500 Crawford Street, Suite 200
Portsmouth, VA 23704
Telephone: (757) 393-4093
Fax: (757) 397-7257
E-mail: nthompson@moodyrrlaw.com

Thomas W. Fuller (MN #0394778)
Hunegs, LeNeave & Kvas, P.A.
1000 Twelves Oaks Center Drive
Suite 101
Wayzata, MN 55391
tfuller@hlklaw.com

Adam W. Hansen
APOLLO LAW LLC
333 Washington Avenue North
Suite 300
Minneapolis, MN 55401
(612) 927-2969
adam@apollo-law.com

***Attorneys for Mark Mlsna***

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2021, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic mean, as more fully reflected on the Notice of Electronic filing:

Scott P. Moore (NE# 20752)
David P. Kennison (NE# 25510)
Baird Holm LLP
1700 Farnam St. Ste. 1500
Omaha, NE 68102
402-636-8311
402-344-0588 (facsimile)
spmoore@bairdholm.com
dkennison@bairholm.com

***Attorney for Defendant***

/s/Nicholas D. Thompson_____