IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

MARK MLSNA,

    Plaintiff,

v.

UNION PACIFIC RAILROAD COMPANY,

    Defendant.

CASE NO. 3:18-cv-00037

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE**

Defendant Union Pacific Railroad Company ("Union Pacific") submits this brief in opposition to Plaintiff's Motions in Limine (Filing No. 186).

## I. ARGUMENT AND AUTHORITIES

### A. Plaintiff's Motion to Exclude Supplemental Dosimetry Data

Mlsna seeks to exclude Union Pacific's supplemental dosimetry data[1], claiming that Union Pacific "withheld" it. (Fiing No. 194, p. 2). Except Union Pacific did not "withhold" anything because Mlsna never requested dosimetry data in the first place. Mlsna's portrayal of Union Pacific's production of the dosimetry data is incomplete and inaccurate.

On May 7, 2018, Mlsna served a notice under Fed. R. Civ. P. 30(b)(6) to depose a Union Pacific corporate designee at Plaintiff counsel's office in Minnesota. (Filing No. 178-1, p. 2; Filing No. 179-2, p. 5). The notice also stated that "[p]ursuant to Rule 30(b)(2)

---

[1] The "dosimetry data" is Union Pacific's representative sampling of noise exposure for its conductors under 49 C.F.R. § 227.103(b)(2)). It provides a "snapshot" of the exposure levels for the tested individuals measuring the average sound on a particular day in a given environment. (Filing No. 51-9, Knight Dec. ¶ 4).

1

… Union Pacific's designee shall produce the below-identified documents prior to the above-noticed deposition." (*Id*. at 3).

Plaintiff's counsel and Defendant's counsel have worked together previously, so that same day counsel for Union Pacific responded, "I am assuming we can work this out like in our other cases considering we did not discuss actual dates on which a witness can be available." (Filing No. 179-2, p. 4). Plaintiff's counsel replied, "I agree that we probably won't have to re-notice the deposition because we'll be able to work it out like we have in our other cases." (*Id.*).

As a result, Union Pacific's counsel wrote to Plaintiff's counsel the next week: "Consistent with the approach that the attorneys for the parties have taken in previous cases, Union Pacific will search using the terms 'Mlsna' or '0431935' (Employee ID#) using these custodians [identifying 7 custodians]." (Filing No. 179-2, p. 3). Plaintiff's counsel responded, "Deal." (*Id*. at 2-3). The parties then agreed on a date range (*Id*. at 1-2) and Union Pacific produced all the documents that the search terms revealed on or about August 17, 2018. (Filing No. 194-4, Plaintiff's Ex. C at p. 2).

Because the parties agreed to search terms, the deposition that Mlsna originally noticed never occurred, and thus no witness appeared to produce the documents under Rule 30(b)(2). Moreover, Union Pacific never responded or objected to the 30(b)(2) requests because the ESI search terms obviated any need to do so for otherwise overbroad and improper requests like Number 16 ("Documents that are relevant and have not been produced in response to any other Rule 30(b)(2) request herein") (Filing No. 178-1).

In January 2019, Plaintiff's counsel inquired if Union Pacific had "produced the

2

dosimetry data on which it is relying for claiming that hearing protection must reduce noise equivalent or greater to a device with a 30 NRR in order to allow Mlsna to safely perform his job's essential functions." (Ex. 1A, email dated January 16, 2019). About a week later, Union Pacific's counsel responded that such data was never requested in discovery and Union Pacific was "unaware that [plaintiff] would be challenging whether conductors needed to wear hearing protection."[2] (Filing No. 194-7, p. 2). In any event, Union Pacific produced two spreadsheets containing dosimetry testing data to show that Union Pacific "did not and is not attempting to withhold any documents or information from Plaintiff." (*Id*.).

Mlsna's counsel claimed that he *had* requested the dosimetry data under document categories 16-17 and 21-23 from the 30(b)(2) notice. (Filing No. 194-8, p. 2). A close review of those requests—which again, Union Pacific never specifically responded or objected to because of the ESI search terms—shows that none of them request dosimetry data:

> 16. Documents that are relevant and have not been produced in response to any other Rule 30(b)(2) request herein.[3]
>
> 17. Documents concerning UP's audiological acuity testing, protocol and requirements for conductors.
>
> 21. Any and all documents referring or relating to UP's efforts to satisfy its obligations under Section 242.117(b) and (i).
>
> 22. Any and all documents concerning UP's approved Amplified

---

[2] This was because Mlsna's Amended Complaint stated, "Train Crewman work in a noisy environment and are therefore required to wear hearing protection." (Filing No. 3 ¶ 14).

[3] *Builders Ass'n of Greater Chicago v. City of Chicago*, No. 96 C 1122, 2001 WL 1002480, at *7 (N.D. Ill. Aug. 30, 2001) (finding a catchall request for all documents "related to" the lawsuit "grossly overbroad"). As explained above, the ESI search terms eliminated the need to object to overly broad requests like this one.

3

>   Hearing Protection Devices (AHPD) offered to Mlsna by UP including but not limited to the manufacturer, distributor, warnings provided, pricing and testing performed by UP or any third parties.
>
>   23. Any and all documents supporting UP's claim that using the AHPD with hearing aids would put Mlsna's hearing at further risk when exposed to loud noises.

(Filing No. 178-1).

In May 2021, Union Pacific produced supplemental dosimetry data and reiterated that while "Plaintiff has not served requests for production in this case, Defendant has nonetheless disclosed relevant documents and, therefore, it is disclosing [supplemental dosimetry data] as well." (Filing No. 194-9, p. 2).

Mlsna's claim that this supplemental data affects his trial strategy is a problem of his own making and created by his approach to discovery. He never served discovery requests except under Rule 30(b)(2) at a deposition that never took place because the ESI search terms did away with it. And even were those requests still "in play," nothing in Nos. 16-17 or 21-23 remotely request the dosimetry data. Union Pacific's counsel nonetheless produced all of the dosimetry data of which it was aware in January 2019 and supplemental data in May 2021. Even though that data was never requested, Union Pacific appropriately produced it well before trial to be safe. Mlsna cannot now exclude it.

B.   **Plaintiff's Motion to Exclude Evidence of his RRB Benefits**

Mlsna moves to exclude evidence of his RRB retirement benefits, claiming that such evidence would be prejudicial. (Filing No. 194, p. 4-5). Union Pacific does not object to this motion, except notes that Mlsna has already conceded the admissibility of his RRB disability benefits application. (Filing No. 194, p. 10-11). As a result, if Mlsna testifies (as he did in his deposition) that he did not receive RRB disability benefits because he opted

to instead pursue retirement benefits (Filing No. 27, Mlsna Dep. 54:17-55:7), he will have opened the door for the jury to hear that he received retirement benefits, even if not the amount.

Relatedly, as explained in Section C below, Union Pacific has a right to show that Mlsna declined the invitation to work with its Vocational Rehabilitation department because that evidence is probative of his failure to mitigate. If Mlsna responds that he did so to preserve RRB benefits, Mlsna will have opened the door again.

C. **Plaintiff's Motion to Exclude Reference to Union Pacific's Vocational Rehabilitation Department**

Mlsna wants to handcuff Union Pacific from arguing that it tried to accommodate him by excluding *all* references to its Vocational Rehabilitation department. But evidence that Mlsna failed to respond to Union Pacific's offers of vocational rehabilitation are probative of his failure to mitigate.

Union Pacific's Vocational Rehabilitation Program "is designed for those employees unable to return to their regularly assigned positions due to injury or illness." *Sweatt v. Union Pac. R.R. Co.,* No. 12 C 9579, 2014 WL 2536807, at *2 (N.D. Ill. June 3, 2014), *aff'd sub nom. Sweatt v. Union Pac. R. Co.,* 796 F.3d 701 (7th Cir. 2015). "Outside vocational rehabilitation counselors work with these employees to develop vocational plans as well as assist with interviewing skills, resume preparation, and training." *Id*. "The counselors work to place the employees in their pre-injury positions if possible, in another open position at Union Pacific, or even in a position outside Union Pacific." *Id*.

Mlsna launches the provocative, unsupported, and uncited allegation that Union Pacific "created its vocational-rehabilitation department" to "limit its exposure." (Filing No.

5

194, p. 6). That is not remotely true, but in any event, if Mlsna thinks that the Vocational Rehabilitation department exists for some nefarious purpose he can explore that on cross-examination, not exclude references to it altogether. So too for his allegation that the Vocational Rehabilitation did not make "genuine efforts to find Mlsna other work," (Filing No. 194, p. 6) again untrue but also an issue for cross-examination and argument. Indeed, as one of Union Pacific's vocational case managers testified:

> Q: You said Mr. Mlsna didn't engage in the interactive process, it sounds like, right?
>
> A: Correct.
>
> Q: Tell me about that. What's your basis for that?
>
> A: We – a letter was sent to Mr. Mlsna in regards to reasonable accommodation services and working with a vocational case manager … It's my understanding that Mr. Mlsna did not respond to this letter and accept accommodation services; therefore, we couldn't determine what skill set he has and what education he has and how we could assist him.

(Filing No. 96, Deardorff Dep. 12:8-22). The jury must decide whether it was Union Pacific or Mlsna who failed to engage in the interactive process, and Mlsna's failure to respond to the Vocational Rehabilitation department's overture is central to that issue.

Mitigation of damages is a defense available to Union Pacific. *Stragapede v. City of Evanston, Illinois,* 865 F.3d 861, 868 (7th Cir. 2017), *as amended* (Aug. 8, 2017) ("A plaintiff who wins a favorable verdict on an ADA claim is presumptively entitled to backpay and the burden then shifts to the defendant to show that the [employee] failed to mitigate damages or that damages were in fact less than [he] asserts.") (internal quotation marks, brackets, and citations omitted). Mlsna's contention that it is improper for Union Pacific to offer evidence of its vocational rehabilitation services is therefore misguided. *Mikus v.*

6

*Norfolk & W. Ry. Co.,* 312 Ill. App. 3d 11, 30, 726 N.E.2d 95, 110 (2000) ("[T]he fact that the defendant in this case offered rehabilitation services and alternative employment after litigation had begun does not render evidence of defendant's offers inadmissible. To so hold could put a chilling effect on the motivation of employers to offer injured employees rehabilitation services and suitable alternative employment.").[4]

Mlsna also speculates that "the only position [Union Pacific] would have identified are [sic] non-railroad jobs," (Filing No. 194, p. 6). Again untrue. Mlsna admitted that he declined Union Pacific's invitation to relocate to another position at the railroad. (Filing No. 27, Mlsna Dep. 74:24-75:4) ("They asked me for relocation, and -- and I -- I said no, I wasn't interested in relocating."). But even so, this is an issue for the jury. Union Pacific does not "kick open the door" to an inadmissible issue by merely offering evidence that it contacted Mlsna about alternative work and he failed to respond.

Finally, Mlsna disingenuously cites out-of-context a passage from *Galloway*, an out-of-state trial court opinion. In *Galloway*, a third-party vocational rehabilitation entity sent plaintiff a letter inviting him to use the railroad's vocational rehab services. (Filing No. 194-10, p. 2). The plaintiff argued that the third party was an agent of the railroad and thus the letter was an ex parte communication to plaintiff, who was represented by counsel. (*Id*. at 3). The plaintiff moved for a protective order and to exclude the letter as

---

[4] Although *Mikus* was a FELA case, the reasoning applies given that mitigation is also an available defense under the ADA. 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5(g) ("Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."). Of course, Union Pacific offered Mlsna vocational rehabilitation services long before litigation began.

7

evidence of the plaintiff's failure to mitigate. Critically, the letter was sent about "<u>*a year after Plaintiff stopped working for Defendant and well after Plaintiff had filed suit*</u>." (*Id*., p. 2). It was based on this fact that the court described the letter as "manipulative, ex parte, and overly clever by half." (*Id*., p. 4).

In stark contrast, Union Pacific's Vocational Rehabilitation Department sent Mlsna a letter in January 2015 (Filing No. 57-2), immediately after Union Pacific decided he could not safely work as a conductor (Filing No. 145, Amended Complaint ¶¶ 59-61) and almost *six months before* Mlsna filed his administrative charge. (Filing No. 145, Amended Complaint ¶ 109). In short, the letter to Mlsna was not part of some devious scheme orchestrated by the Vocational Rehabilitation department to "limit exposure." It was an earnest attempt to help Mlsna and a far cry from the one sent in *Galloway* long after suit was filed. Mlsna's misrepresentations and incendiary accusations should be disregarded.

**D.**      **<u>Plaintiff's Motion to Exclude Reference to FELA</u>**

Mlsna correctly acknowledges that "Union Pacific is liable to its employees who are injured by its negligence." (Filing No. 194, p. 6). Union Pacific agrees, and that is why explaining the basis for why it mandates hearing protection is critical.

Avoiding negligence liability under FELA is one of many reasons that Union Pacific requires all conductors to wear hearing protection. Mlsna's own audiologist agrees that at 85 decibels, it is reasonable for an employer to require hearing protection. (Filing No. 162, Dr. Kloss Depo. 106:17-22). In fact, while Dr. Kloss "d[oesn't] know" whether it is 85 decibels or 90 decibels that puts an individual at risk for hearing loss, he "use[s] 85 just because it's a more conservative number." (*Id.,* Dr. Kloss Dep. 104:21-105:4).

Union Pacific collects noise exposure data and is aware of many readings above

8

85 decibels (Filing No. 53-5; 53-6).  For instance, Union Pacific recorded an exposure of 89 decibels in November 2009 (Filing No. 53-5, at 11/11/2009, Matthew Burt) and 89.6 in November 2014 (Filing No. 53-5 at 11/5/2014, Scott Dvonch). [5]

It would be negligent-bordering-on reckless to allow conductors to work without hearing protection in areas where Union Pacific *knows* they will encounter noise in excess of 85 decibels. The Seventh Circuit recognized this principle in *E.E.O.C. v. Schneider Nat., Inc.,* 481 F.3d 507, 509 (7th Cir. 2007), an ADA case in which a trucking company refused to allow a plaintiff with neurocardiogenic syncope to drive commercial vehicles because that condition caused a catastrophic accident years earlier. The Seventh Circuit reasoned that if the plaintiff caused a similar crash, "[t]he victim's lawyers would wave [sic] the [prior] accident in front of the jury, asking it to award punitive damages because the company had continued to employ drivers with neurocardiogenic syncope after having been warned by [the prior] accident." *Id*. at 510.  "The argument for punitive damages would be that employing [plaintiff] in the wake of [the prior] accident showed that [employer] had acted in the face of a known risk and was therefore reckless." *Id*.[6]

The same is true here. If an employee suffered hearing loss because Union Pacific allowed that person to work without hearing protection *while knowing the certainty of encountering 85 decibels*, it would have to answer for that. *CSX Transp., Inc. v. McBride,* 564 U.S. 685, 705 (2011) (explaining that a railroad causes an injury if its negligence "no matter how small" played a role in bringing about the injury). Indeed, a FELA plaintiff need

---

[5] Mlsna draws a bright line between pre-2007 data and post-2007 data. Union Pacific disagrees with Mlsna that readings before 2007 are "irrelevant," but in any event what data is relevant or not is exclusively for the jury.

[6] Although punitive damages are not recoverable under FELA, the reasoning in *Schneider* about recklessness in the face of a known risk still applies.

only prove that a railroad could have reasonably foreseen an injury caused by noise exposure and failed to take precautions. *Tufariello v. Long Island R. Co.*, 458 F.3d 80, 91-92 (2d Cir. 2006). Union Pacific has a right to explain to the jury why it requires conductors to wear hearing protection, including to avoid liability. This is all the more true because Mlsna is challenging whether he should have to wear hearing protection *at all*.

Mlsna's argument about a "side trial" on FELA liability is a red herring. Union Pacific need not *prove* FELA liability. (Filing No. 194, p. 9). Rather, Union Pacific can explain that reasonable concerns *about* FELA liability is one of the reasons it requires hearing protection.[7] Mlsna's motion should be denied.

### III. CONCLUSION

For these reasons, Union Pacific requests that the Court deny Plaintiff's Motions in Limine.

Dated this 1st day of June, 2021

        UNION PACIFIC RAILROAD COMPANY, Defendant

        By: /s/ Scott P. Moore
           Scott Parrish Moore (admitted pro hac vice)
           David P. Kennison (admitted pro hac vice)
           BAIRD HOLM LLP
           1700 Farnam Street, Suite 1500
           Omaha, NE 68102-2068
           Phone: 402-344-0500
           spmoore@bairdholm.com

---

[7] Since FELA is the only avenue for railroad employees to recover, Union Pacific must mention the statute by name rather than general tort liability under state law.

dkennison@bairdholm.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Nicholas D. Thompson
Thomas W. Fuller
Adam W. Hansen

and I hereby certify that I have mailed by United States Postal Service, postage prepaid, this document to the following non CM/ECF participants:

None.

/s/ Scott P. Moore_____

DOCS/2641880.1