IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MARK MLSNA,

                Plaintiff,                OPINION AND ORDER

v.

                                    18-cv-37-wmc

UNION PACIFIC RAILROAD COMPANY,

                Defendant.

At the end of a jury trial, plaintiff Mark Mlsna prevailed on his claim that defendant Union Pacific Railroad Company violated the Americans with Disabilities Act when it declined to recertify him as a train conductor because of his hearing impairment. The jury awarded Mlsna $3,670,000 in compensatory damages and $40,300,000 in punitive damages. Imposing statutory caps, the court then vacated the punitive damages award and reduced the compensatory damage to $300,000. On August 13, 2021, the court entered judgment against Union Pacific in the amount of $1,666,469.90, consisting of compensatory damages, back pay, front pay and prejudgment interest.

Two post-trial motions are still pending. First, Union Pacific moves for judgment as a matter of law under Federal Rule of Civil Procedure 50. (Dkt. #320). Second, Mlsna moves for attorney fees and costs. (Dkt. #322.) For the reasons below, the court will deny Union Pacific's motion and grant attorney fees and costs to Mlsna. After reducing the fees requested by $20,000, this results in an award of $1,219,570 in attorney fees and $104,110.06 in actual costs, for a total, additional award of $1,323,680.06.

BACKGROUND

The court provided a detailed factual background of this case at summary judgment (dkt. #97 and dkt. #172) and again in its posttrial decision (dkt. #309). Briefly, Mlsna has a hearing impairment and has worn hearing aids for over 20 years. Despite this disability, Mlsna was able to work as a thru-freight train conductor for Union Pacific for nearly a decade. After implementing a new hearing acuity and conservation policy, however, Union Pacific declined to recertify Mlsna as a train conductor and held him out of service beginning on January 8, 2015. This court originally granted summary judgment in defendant's favor, but after remand by the Seventh Circuit, *Mlsna v. Union Pacific*, 975 F.3d 629 (7th Cir. 2020), and a three-day trial, a jury found that Union Pacific discriminated against Mlsna because of his hearing disability and failed to provide a reasonable accommodation, both in violation of his rights under the ADA.

OPINION

I. **Defendant's Motion for Judgment as a Matter of Law Notwithstanding the Jury Verdict**

At trial, Union Pacific moved for judgment as a matter of law on two issues: (1) plaintiff failed to show that he is a qualified individual with a disability who could perform the essential functions of his job, including effectively communicating with his coworkers and wearing hearing protection; and (2) plaintiff failed to identify an effective and reasonable accommodation that Union Pacific could have provided. (Dkt. #305 (6/30/21

PM Trial Tr.) 62, 124.)  Union Pacific has now renewed these challenges in its post-trial motion under Rule 50(b).[1]

"In deciding a Rule 50 motion, the court construes the evidence strictly in favor of the party who prevailed before the jury and examines the evidence only to determine whether the jury's verdict could reasonably be based on that evidence." *Passananti v. Cook County*, 689 F.3d 655, 659 (7th Cir. 2012).  The court reviews the entire record, but may not reweigh the evidence, make credibility determinations, or consider evidence favorable to the moving party that the jury was not required to believe.  *Id.*  Thus, Union Pacific is entitled to judgment as a matter of law only if the jury did not have a "legally sufficient evidentiary basis" to find in Mlsna's favor.  *Id.*; Fed. R. Civ. P. 50(a)(1).  After reviewing Union Pacific's motion with these standards in mind, the court will not set aside the jury's verdict.

### A. Qualified Individual with a Disability

To prevail on a disability discrimination claim under the ADA, Mlsna needed to show by a preponderance of the evidence that: (1) he was disabled within meaning of the statute; (2) Union Pacific was aware of that disability; (3) he was qualified for the job in question; and (4) he was discharged or subjected to another adverse action because of his disability.  *Conners v. Wilkie*, 984 F.3d 1255, 1260–61 (7th Cir. 2021); *Kurtzhals v. Cnty. of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020); *Whitaker v. Wisconsin Dep't of Health Servs.*, 849

---

[1] Union Pacific also moves for judgment as a matter of law on Mlsna's entitlement to punitive damages.  However, the court vacated Mlsna's punitive damages award already (dkt. #309), so Union Pacific's arguments regarding punitive damages are moot.

3

F.3d 681, 684 (7th Cir. 2017). In its Rule 50 motion, Union Pacific contends that no rational jury could have found that Mlsna satisfied the third of these elements because he was plainly not "qualified" to perform the job of train conductor.

Specifically, Union Pacific argues that Mlsna's sworn statements in his Railroad Retirement Board Disability Benefits Application confirm that he was no longer qualified to be a train conductor. When asked how his conditions prevented him from work, Mlsna also wrote: "Has problems hearing, unable to jump from train to train because of the loss of right leg, difficult bending-needs support, difficult to walk on tracks especially uneven tracks, has to make sure he takes pills to keep the diabetes under control." (*Id.*) Finally, he represented on the form that he could no longer work as of the date of his termination by the defendant, January 8, 2015. (*Id.*) Mlsna signed his disability application form on November 23, 2015, affirming that the information provided "represents the complete truth" to the best of his knowledge under penalty of civil and criminal penalties. (*Id.* at 31.)

As an initial matter, Union Pacific has raised this argument before, and this court already rejected it. As the court stated in its post-trial decision, "Mlsna's statements in his RDB application were consistent with his claim that he was and remains qualified to perform the essential functions of his train conductor job," but for the company's mistaken finding otherwise. (Dkt. #309, at 15.) The court explained that Mlsna only filed an application for railroad disability benefits ("RDB") *after* he was held out of service by Union Pacific. Context matters, as the application form asked Mlsna if his conditions "prevent [him] from working now," to which Mlsna accurately responded, "Yes." (Def.'s Trial Ex.

4

507 at 10.) Moreover, although Mlsna stated in the form that a number of conditions caused him to file the application in addition to the hearing problems in both ears, he had successfully managed to work with all those other factors -- the loss of his right leg, high blood pressure, diabetes, an enlarged prostate, and high cholesterol -- for many years. (*Id.*) Even more important, the *unchallenged cause* of his termination was Union Pacific's adoption of a new hearing acuity and conservation policy. In short, the court explained in detail its reasons for rejecting this argument and will not address them further. (*Id.* at 15–16.)

Moreover, Mlsna testified *and* was cross examined at length about his filling out and executing this disability application form and whether it was inconsistent with his ADA claim. (Dkt. #304 (6/29/21 AM Trial Tr.) 49–51, 90–96.) Plus, the court provided a closing instruction about how the jury should consider Mlsna's disability benefits application. (Dkt. #276, at 17–18.) Nevertheless, the jury was entitled to believe Mlsna's explanation for any apparent inconsistency between the sworn application form that he was too disabled to work and his ADA claim that he could and would have continued to work, ultimately finding that he could have continued to perform his job with reasonable accommodations. The court will, therefore, defer to the jury's factual finding and deny Union Pacific's posttrial motion for judgment as a matter of law.

### B. Failure to Provide Reasonable Accommodation

To prevail on his failure-to-accommodate claim, Mlsa had to prove that Union Pacific failed to provide him a reasonable accommodation. *Conners*, 984 F.3d at 126. At trial, Mlsna presented the jury with a number of proposed accommodations that Union Pacific could have considered, including: permitting Mlsna to wear the E.A.R. Primo or a

5

similar device for hearing protection; allowing him to wear earmuffs over his hearing aids; waiving Union Pacific's hearing-protection requirement for Mlsna, whose position did not require hearing protection under the federal regulations; or waiving the requirement that Mlsna meet the federal hearing-acuity threshold while wearing hearing protection, a requirement that applied only to hearing-impaired employees.

In its posttrial motion, Union Pacific once again argues that none of these would have been "reasonable accommodations" because they would have required Union Pacific to give preferential treatment to Mlsna, waive important safety requirements, or implement devices that were not commonly available or in existence at the time Mlsna was terminated. However, as the Seventh Circuit already decided, it was for the jury to decide this question of fact: whether wearing hearing protection was an essential function of Mlsna's work as a conductor, as well as whether reasonable accommodations for the conductor were properly considered. *Mlsna*, 975 F.3d at 634–35. At trial, plaintiff's expert testified that hearing protection was not necessary based on the noise levels to which Mlsna was actually exposed. (Dkt. #300 (6/28/21 PM Trial Tr.) 107–08 and Dkt. #304 (6/29/21 AM Trial Tr.) 25, 31, 36, 157–58.) Plaintiff also presented credible evidence that Union Pacific (1) should have waived its requirement that Mlsna meet hearing acuity standards while wearing hearing protection (Dkt. #300 (6/28/21 PM Trial Tr.) 98–99 (Trangle)), (2) should have considered permitting Mlsna to use devices or equipment that would have allowed him to hear better while wearing hearing protection, and (3) failed to engage in the interactive process with Mlsna. *See Mlsna*, 975 F.3d at 638–39 ("A proposed accommodation is not limited to what the plaintiff introduced into the process, here the

6

E.A.R. Primo. Union Pacific was obliged to do more than just conclude that Mlsna's proposal must fail because it is contrary to the railroad's policy.") (citation omitted). Since the jury could have credited any or all of these grounds in finding Union Pacific failed to provide Mlsna a reasonable accommodation, the court must deny Union Pacific's motion for judgment as a matter of law on this issue as well.

**II. Plaintiff's Motion for Attorney Fees and Costs**

The court may award the prevailing party reasonable attorney fees and costs under the ADA. 42 U.S.C. § 12205. Plaintiff has filed a motion for an award of attorney fees based on the lodestar method: the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Houston v. C.G. Sec. Servs., Inc.*, 820 F.3d 855, 859 (7th Cir. 2016). In support, his counsel submitted billing records showing 2,475 hours of work spent on the case and hourly rates ranging from $400 to $550 for attorneys and $175 for law clerks (Hansen Decl. (dkt. #329) ¶ 25), for a total of $1,239,570 in attorney fees and $104,110.06 in costs.

Although the lodestar method yields a "presumptively reasonable fee," *World Outreach Conf. Ctr. v. City of Chicago*, 896 F.3d 779, 783 (7th Cir. 2018), the district court has discretion to "determine whether an adjustment is warranted under the case-specific circumstances." *Nichols v. Illinois Dep't of Transportation*, 4 F.4th 437, 441 (7th Cir. 2021). Mlsna argues that the court should award the full lodestar amount because: (1) counsel bore significant risk in bringing this case on a contingency basis, and in advancing all litigation costs during the six years of litigation; (2) counsel brought significant expertise

7

and experience that benefitted Mlsna throughout the case; (3) Union Pacific mounted an aggressive defense strategy, which Mlsna successfully defeated through a jury trial; (4) the requested costs are reasonable and supported by counsel's records; and (5) counsel achieved an exceptional result for Mlsna.

The court agrees that all of these factors support Mlsna's fee request, with the most significant being the final degree of success achieved. *Hensley*, 461 U.S. at 436 (degree of success achieved is "the most critical factor" in determining the reasonableness of a fee award). When "a plaintiff has obtained excellent results, [the] attorney should recover a fully compensatory fee," but if "a plaintiff has achieved only partial or limited success, [the lodestar] may be an excessive amount." *Id.* at 435–36. In this lawsuit in particular, the court agrees with Mlsna that his counsel achieved an exceptional result, including successfully appealing to the Seventh Circuit and successfully trying this matter before a jury who assessed more than $43.9 million in punitive and compensatory damages (before being reduced to $300,000 due to the ADA's statutory cap). Thus, Mlsna secured the *maximum* amount in damages available under the ADA, along with equitable awards of front pay, back pay and prejudgment interest, for a total judgment of $1,666,470 before fees and costs. Surely, this qualifies as excellent results. *E.g., Shoemaker v. Bass & Moglowsky, S.C.,* No. 19-CV-316-WMC, 2020 WL 1671561, at *2 (W.D. Wis. Apr. 3, 2020) (settlement qualified as an "exceptional settlement" where class members received more than was available under the remedies provision of the applicable statute, and the settlement required defendant to alter its business practices); *Vought v. Bank of Am., N.A.*, No. 10-CV-2052, 2013 WL 269139, at *7 (C.D. Ill. Jan. 23, 2013) (awarding $2,000,000

8

in fees, in part, because the settlement required defendant to pay "the maximum amount that they could be required to pay under the RESPA statute").

Nevertheless, Union Pacific contends that despite Mlsna's counsel achieving exceptional results through a jury trial, the fee request should be reduced for several reasons. First, it argues that the fee award should be reduced because counsel's rates are unreasonable. However, counsel submitted ample evidence showing that their requested rates are within the range of reasonableness for attorneys with similar expertise and experience in the market (Hanson decl. (dkt. #329) Ex. D–M), and the court is satisfied that their rates are reasonable. Tellingly, defendant's counsel did not disclose their own rates, causing the court to infer those rates are as high or higher than plaintiff's counsel.

Second, Union Pacific argues that Mlsna cannot recoup fees for time spent on his failed disparate impact claim or his appeal of the FRA certification decision. However, this time is only excludable if those claims were distinct from Mlsna's successful claims. *See Hensley*, 461 U.S. at 440 (court may exclude time spent on unsuccessful claims that are distinct from successful claims); *see also Richardson v. City of Chi.*, 740 F.3d 1099, 1103 (7th Cir. 2014) (district court may reduce attorneys' fee award to reflect the time devoted to "the successful portion of the litigation"). Even then, fees need not be reduced for time spent on an unsuccessful claim if it was non-frivolous and relevant to the party's overall legal theory. *See Wink v. Miller Compressing Co.*, 845 F.3d 821, 824 (7th Cir. 2017) ("[I]t was prudent for the lawyers to press [unsuccessful claim] in order to reduce the likelihood of a total defeat. And because the claims were so similar and based largely on the same facts, the marginal cost of presenting the interference claim to the jury was slight."). Here,

9

Mlsna's disparate impact, disparate treatment and reasonable accommodation claims were closely related, arose out of the same allegations, and sought the same relief. Thus, the court will not exclude time spent on the disparate impact claim.

As for the time spent appealing the FRA denial of recertification, the court agrees plaintiff may not recover for the time spent solely on that appeal, as the parties agreed that they would pay for their own attorney fees when they settled the appeal. (Dkt. #237-1.) However, plaintiff may recover for the time spent researching FRA regulations and standards while also pursuing recertification because that research was relevant to plaintiff's ADA claims as well. Based on the time records of plaintiff's counsel relating to the FRA appeal, approximately half of that time was spent on FRA proceedings that also advanced plaintiff's ADA claims. (Dkt. #335-3.) Therefore, plaintiff may recover $20,000 from the approximately $40,000 spent during the FRA appeal.

Third, Union Pacific argues that several of counsel's time entries should be excluded because they are vague, "block-billed," unnecessary or duplicative of the work of other attorneys. Although often skeptical of just such inflating techniques, the court is unpersuaded by any of these arguments on this record. Indeed, many of the criticized costs about which Union Pacific complains were in response to Union Pacific's own litigation strategies. Plus, this litigation extended for more than six years and included an appeal to the Seventh Circuit, multiple dispositive motions, motions to strike, and motions to compel by Union Pacific. The Seventh Circuit has cautioned that "defendants who drive up the expense of litigation must pay the full costs, even if legal fees seem excessive in retrospect." *Cuff v. Trans States Holdings, Inc.*, 768 F.3d 605, 611 (7th Cir. 2014). Here,

10

it was not unreasonable for multiple lawyers to work or consult on the case, particularly given the complex interplay between federal railroad regulations, Union Pacific's own policies and tactics, and the ADA. Similarly, Union Pacific objects to plaintiff's request for attorney fees related to travel as unreasonably high and wasteful. Again, however, plaintiff has provided detailed explanations for each travel expense, satisfying the court that the travel expenses are compensable.

Moreover, contrary to Union Pacific's arguments, time entries such as "draft jury instructions" or "revise motions in limine" are not unreasonably vague. Although there may be a handful of time entries that are arguably too vague, and there may be some tasks that involved too many lawyers, the court declines to second-guess the staffing decisions made by plaintiff's counsel, particularly where they were footing the bill. As the Supreme Court has stated, the "essential goal in shifting fees … is to do rough justice, not achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). To that end, the Court has noted that district courts may consider "their overall sense of the suit" and "may use estimates in calculating and allocating an attorney's time." *Id.* Courts are also not required to "undertake a line-by-line inquiry" of a voluminous fee petition. *Vega v. Chicago Park Dist.*, 12 F.4th 696, 705 (7th Cir. 2021). Having reviewed counsel's time entries, the court is satisfied that the overall time spent on the litigation by plaintiff's counsel was within the realm of reasonableness.

Fifth, and finally, Union Pacific argues that plaintiff's costs are unreasonably high. However, plaintiff has adequately explained the basis for its costs, including expert fees,

and provided documentation to support the cost requests. Accordingly, the court will award plaintiff's costs in full.

ORDER

IT IS ORDERED that:

1) Defendant's motion for judgment as a matter of law (dkt. #320) is DENIED.

2) Plaintiff's motion for attorney fees (dkt. #322) is GRANTED IN PART and DENIED IN PART as set forth above. Defendant must pay plaintiff's counsel $1,219,570 in adjusted attorney fees and $104,110.06 in costs, for a total award of $1,323,680.06.

Entered July 12, 2023.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge